**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JEFFREY D. ALLEN,                              )
                                               )
              Plaintiff,                       )
                                               )
       v.                                      )        No. 04 C 7954
                                               )
BAXTER INTERNATIONAL INC. and                  )
BAXTER INTERNATIONAL INC.                      )
ADMINISTRATIVE COMMITTEE, Plan                 )
Administrator,                                 )
                                               )
              Defendants.                       )

**MEMORANDUM OPINION**

Before the court are defendants' motion for summary judgment and defendants' motion to strike portions of plaintiff's statement of additional material facts. For the reasons explained below, defendants' motion for summary judgment is granted in part and denied in part, and defendants' motion to strike is denied.

**BACKGROUND**

Plaintiff, Jeffrey D. Allen, brings this ERISA action against defendants Baxter International Inc. and the Baxter International Inc. Administrative Committee, the plan administrator of the corporation's Severance Pay Plan. We will refer to defendants collectively as "Baxter." Plaintiff claims that Baxter violated ERISA by failing to pay him severance pay to which he was entitled and that it breached an agreement to pay him certain pension

benefits.  Baxter contends that plaintiff was not unlawfully denied severance benefits because its interpretation of the plan was reasonable and that there was no breach.

The material facts are as follows and are undisputed except where noted.   Plaintiff is a former employee of Baxter International Inc.  His employment with Baxter began in 1987, when he was hired as an accountant.   Over the years, plaintiff rose through the ranks to financial executive positions at various Baxter locations in the United States.   In 2001, plaintiff was transferred to Baxter's office in Brussels, Belgium to serve as vice-president of finance of Baxter's Renal Division.

We need not go into all the facts asserted by plaintiff regarding the circumstances of his brief employment in Europe because they are largely irrelevant to the issues before us.[1]  To sum up for purposes of exposition, according to plaintiff, he had a falling-out with his supervisor in Europe, who was Bruce

---

[1]  Defendants have moved to strike paragraphs 40-49, 51-72, 84-93, and 101-103 of plaintiff's statement of additional facts as well as plaintiff's entire affidavit.  Plaintiff's statements largely concern the circumstances of his employment in Belgium, his relationships with his supervisors, his performance, and his job transfers.  Defendants argue that this material is irrelevant, or consists of legal argument, or is inadmissible hearsay.

The motion to strike will be denied.  In large part, the substance of defendants' argument has merit, but defendants should have incorporated their arguments into their reply brief instead of filing a separate motion to strike. Motions to strike are generally disfavored except when they serve to expedite.  See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Defendants' motion does not serve to expedite or streamline matters here; rather, the motion itself is unnecessary clutter.  We need not wade through each of plaintiff's statements and his affidavit to provide a detailed analysis of why each statement is or is not material.  We agree with defendants that many of plaintiff's statements and portions of his affidavit are indeed immaterial. Those statements have been disregarded, and it will be clear from our discussion and analysis which facts are relevant to the issues.

McGillivray, the president of Baxter's Renal Europe Division. Plaintiff asserts that in the spring of 2002, McGillivray informed him that he did not want to keep plaintiff in his position because, although plaintiff's sales forecasts had been accurate, there had been poor sales growth. In addition, McGillivray "didn't feel a partnership" with plaintiff, and plaintiff was "not his guy." McGillivray told plaintiff that he should contact John Greisch, plaintiff's supervisor in the United States. In July 2002, Greisch asked plaintiff to relocate back to the United States to work under Greisch in Illinois.

In September 2002, plaintiff returned to the United States as a vice-president and controller under Greisch's supervision. On January 28, 2003, Greisch sent plaintiff a memorandum entitled "Performance Improvement Plan." The memorandum addressed concerns with plaintiff's performance in "two significant areas"-- "leadership skills" and "analytical skills/business acumen," and it stated in part:

> Over the last four months we have had several discussions regarding issues with your performance, specifically in terms of your leadership and detail understanding of issues and financial details in advance of making decisions or drawing conclusions. In addition, Bruce McGillivray has discussed similar concerns with performance, in your previous role as VP Finance Renal Europe. I am very concerned about your overall performance and ability to meet the expectations of this role.
>
> Due to the seriousness of these issues, you are now on a performance improvement plan.

>     This constitutes a formal final written notification.
>     Over the next 60 (sixty) day period, you must focus on
>     improving your performance in your role. . . .

(Complaint, Ex. G, at 1.) Greisch also identified "accountability" as a "serious issue" and outlined "the expectations necessary for [plaintiff] to demonstrate [his] ability to meet the requirements of [his] role." (Id. at 3.) One "action item" was that plaintiff was to be able to "[e]xhibit complete command of the facts and details surrounding [Baxter's] financial performance and forecast outlooks over the next two months." (Id.) The memorandum stated in closing: "You must complete all your action items within the time frame stated above and improve your performance to an acceptable level for a VP Finance by March 31, 2003. Failure to show immediate and sustained improvement in these areas will result in termination. I will provide any support that I can throughout this period to assist you in succeeding. To that end, we will meet weekly to review your progress on the above action plans." The last page of the memorandum contained a signature line for plaintiff's "recei[pt] and acknowledg[ment]." (Id. at 4.)

Shortly thereafter, plaintiff and Greisch discussed the Performance Improvement Plan. Plaintiff disagreed with Greisch's assessment of his performance and refused to agree to the plan or to sign the memorandum. Plaintiff also inquired about what benefits he would be entitled to should his employment be

terminated; plaintiff believed that he would be entitled to severance pay.

On January 31, 2003, Greisch sent plaintiff a memorandum entitled "Transition from Baxter." The memorandum stated in pertinent part:

> The purpose of this memo is to summarize our discussions concerning your transition from Baxter. During our discussion on Wednesday, January 29, 2003, you chose not to proceed or operate under a performance improvement plan, and independently elected to leave the organization. In connection with this transition, we have agreed to the following:
>
> 1) Your Resignation Date is May 31, 2003. We will provide you with your current salary and benefits through your Resignation Date. . . .
>
> 2) You will continue to act as the VP Global Finance until May 1, 2003, or until we fill or replace your position, whichever is sooner. . . . As of May 1, 2003, or when we fill your position, whichever is sooner, you will be relieved of your duties, but will continue to receive your salary and benefits through May 31, 2003. . . .
> 4) In consideration of these commitments made to you regarding continuing outplacement assistance and extended resignation date, you must sign an Employment Termination and General Release Agreement, a sample copy of which is attached. . . .
>
> Nothing stated in this memo is intended to create a contract of employment, and you continue to be an at-will employee of Baxter throughout the remainder of your employment with the Company.

(Complaint, Ex. H.) The letter did not mention severance benefits, although plaintiff claims that he discussed the possibility of receiving severance pay with Greisch.

Plaintiff did not sign the January 31 memorandum.  Discussions ensued between plaintiff and Greisch, and on February 10, 2003, Greisch sent plaintiff a revised memorandum regarding plaintiff's "transition from Baxter."  The memorandum was substantially the same as the January 31 memorandum, except that the Resignation Date was changed to July 31, 2003 and plaintiff's responsibilities in his position would continue until April 1 instead of May 1.  Moreover, it stated that if plaintiff did not sign the agreement, any remaining salary and benefits, as well as outplacement, would be "discontinued." (R. 41.)[2]

Plaintiff did not sign the February 10 memorandum either.  Instead, on February 13, he sent Greisch a letter stating: "I accept that the company wishes to terminate my employment with Baxter.  However, I expect the company to fully meet its obligations under all applicable employee benefit plans."  Plaintiff expressed in detail his disagreement with Greisch's evaluation of his performance.  In closing, plaintiff stated that he believed that the Performance Improvement Plan was "nothing more than a disingenuous, weak attempt to camouflage the company's termination of [him] and to avoid the cost of termination benefits."  In plaintiff's opinion, "the termination decision was made while [he] was still employed in Europe," and he was "brought

---

[2]    Citations to "R." are to the plan administrator's Administrative Record, Exhibits 1-11 to the Affidavit of Ann Donohue (Corporate Counsel for Baxter), which is attached as Exhibit A to Defendants' Rule 56.1 Statement.

back to the United States under the guise of filling a position that [Baxter] intended to eliminate." Plaintiff demanded that Baxter provide him "the full benefits of all company employee benefit plans (i.e. full severance and all other termination benefits)." (R. 24-27.)

Greisch responded to plaintiff in a letter also dated February 13. Among other things, Greisch responded to what he deemed "several factual errors" in plaintiff's letter and indicated that during their discussions, he had "made it very clear that this was a performance issue and that [plaintiff] was not entitled to severance." (R. 21-23.)

Greisch and plaintiff met on the evening of February 13. Greisch asked whether plaintiff would sign the February 10 final transition memorandum. Plaintiff refused. According to plaintiff, Greisch told him not to return to work other than to retrieve his belongings the next morning.

After plaintiff retrieved his belongings, he corresponded with Baxter's Human Resources Department. In Baxter's view, plaintiff had resigned; plaintiff's position was that he was fired by Greisch. Rana Strellis, a Human Resources employee, sent a letter to plaintiff on February 21, 2003 to "clarify" the Severance Pay Plan. Strellis stated that "an employee is eligible for severance benefits if Baxter eliminates the employee's position or reduces the size of its workforce. An employee is not eligible for

severance benefits 'if [his] employment ends for any and all reasons--other than the elimination of [his] position and/or a workforce reduction,' including if the employee resigns or does not meet the performance requirements of the job (as determined at the sole discretion of Baxter)." (R. 19.)

On April 24, 2003, plaintiff, through counsel, made a formal claim for severance benefits under both Baxter's "European Severance Plan" and under the "U.S. Plan." Plaintiff contended, inter alia:

> On May 21, 2002, Mr. Bruce McGillivaray [sic] advised Mr. Allen that he was being sent back to the United States for no reason other than because Mr. McGillivray needed to "go in a different direction."
>
> It is our position that Mr. Allen was terminated on this date and was transferred back to employment in the United States and continued on the payroll of Baxter for the sole purpose of depriving him of the European Severance Plan benefits. . . . The total European Severance Benefit payment due Mr. Allen is $660,509.00.
> . . .
> Alternatively, a claim is submitted under the U.S. plan; specifically the Baxter International Inc. and Subsidiary Severance Pay Plan. Under that plan, Mr. Allen was terminated on February 13, 2003 by his immediate supervisor, Mr. John Greisch. When Mr. Allen refused to sign a "voluntary resignation" letter and an "Employment Termination and General Release Agreement," that Mr. Greisch had demanded he sign, Mr. Greisch then informed Mr. Allen that he shouldn't bother coming back to work and that he could pack up his belongings and leave. Although the company later tried to characterize these events as a "resignation," the truth is that Mr. Allen's departure was the company's decision.
>
> The simple fact is that Mr. Allen's position with the company was eliminated at the election of Baxter. Also, Baxter had been executing a reduction in its overall

workforce for some time.  Mr. Allen, despite many years
of exemplary service to the company, simply stood in the
way of the plans of the company and of Mr. Greisch.
Given his performance for the company and the reviews he
received over many years, there is simply no other
credible explanation for his abrupt termination. . . .

(R. 13-15.)

Baxter denied plaintiff's claim in a September 6, 2003 letter

from the plan administrator.  The letter stated in pertinent part:

This letter is to inform you that the Committee has
reviewed Mr. Allen's claim for benefits under the U.S.
Baxter Severance Plan and has denied his claim.

The Committee has reviewed all relevant information and
has concluded that Mr. Allen's position was not
eliminated and that he was not subject to a reduction in
force.  As stated in John Greisch's memo dated February
10, 2003, Mr. Allen elected to terminate employment
rather than continue in employment under a performance
improvement plan.  Therefore, under the terms of the U.S.
Baxter Severance Plan, Mr. Allen is not entitled to
severance benefits.  Section 2.1(n) of the Severance Plan
provides that "termination" for purposes of the plan
shall not mean termination of employment with an employer
because of the eligible employee's voluntary termination
of employment with the employer.
. . .
I understand that you have been in contact with human
resources in Europe regarding Baxter's European benefit
plans.  As you know, the Committee does not have
authority regarding Baxter's European plans.  I have
received your request for a copy of the Belgium severance
plan and have forwarded your request to Ms. Vinciane
Verbiest, director of human resources in Belgium.  If you
do not receive information from Ms. Verbiest within a few
weeks, please let me know.

(R. 7-8.)

On October 22, 2003, plaintiff initiated an administrative

appeal of the denial of severance pay.  Plaintiff argued that he

did not resign from Baxter; rather, he was fired by Greisch. In addition, the appeal letter asserted: "Mr. Allen's position was in fact eliminated after he was terminated by Baxter. No other vice-president was appointed to or filled Mr. Allen's 'position' after his termination. Moreover, as has been widely reported in the business news media, Baxter had been undergoing a substantial reduction in workforce for some period of time, both before and after Mr. Allen's termination." (R. 6.)

The plan administrator denied plaintiff's appeal in a letter dated February 19, 2004, which stated in relevant part:

> The Appeals Subcommittee has reviewed all relevant information and has concluded that Mr. Allen is not entitled to severance benefits.

> Under the terms of the U.S. Baxter Severance Plan, Mr. Allen is not entitled to severance benefits. Section 2.1 of the Severance Plan provides that "termination" for purposes of the plan does not include voluntary termination of employment, nor does it include termination because the employee does not meet the performance requirements of the job.

> Mr. Allen states that he was involuntarily terminated because his supervisor told him to leave the premises and not return. Baxter human resource's [sic] position is that Mr. Allen voluntarily terminated his employment because he was offered the opportunity to continue in employment subject to certain conditions and chose not to accept those conditions.

> Regardless, whether Mr. Allen was terminated by his supervisor because he was not meeting the requirements of his position or he voluntarily terminated because he chose not to remain in employment, Mr. Allen is not entitled to severance benefits. The Plan provides benefits in only very narrow circumstances--when a position is eliminated or when an employee is terminated

due to a reduction in force. Neither circumstance
applies to Mr. Allen.

(R. 2.)

Regarding plaintiff's claim for European benefits, plaintiff's
counsel received letters from Baxter's European counsel on July 11,
2003; October 10, 2003; and December 18, 2003, which are attached
to the complaint as Exhibits R, W, and Z. In those letters,
Baxter's counsel stated that plaintiff was not eligible for
"termination indemnity calculated on the basis of the so-called
Claeys formula, [] sometimes used in Belgium for the calculation of
the termination indemnity in lieu of a notice period." In Baxter's
view, U.S. law "remained applicable to [plaintiff's] employment
contract during his temporary assignment abroad" because plaintiff
had remained an employee of Baxter in the United States during his
temporary foreign assignment. (Complaint, Ex. R.)

Allen filed the instant action on December 8, 2004, alleging:
"Plaintiff's employment ended involuntarily because Baxter
eliminated his position and reduced the size of its workforce, and
thus Plaintiff is entitled to severance pay from the Baxter
Severance Pay Plan, either its European or U.S. Plan, and Plaintiff
is also owed other funds, including those under Baxter's Stock
Option Plan and Management Incentive Compensation Plan ('MICP')."
(Complaint, ¶ 2.)

In Counts I and II, plaintiff seeks a "European severance benefit payment" of $664,439.00, along with interest and attorney's fees and costs. In Count III, plaintiff alternatively seeks benefits under the U.S. Severance Plan of $167,997.00 plus attorney's fees and costs. Count IV is a breach of contract claim for unpaid pension benefits of $19,621.50 plus interest.

Defendants now move for summary judgment and to strike portions of plaintiff's statement of additional material facts.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence

that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

## A.   **Severance Pay**

### 1.   **Counts I and II**

In Counts I and II, plaintiff alleges that Baxter failed to pay him benefits under the European Severance Plan and failed to give him proper notice of the denial of benefits under that plan. Baxter maintains that it does not have a "European Severance Plan" and that even if such a plan existed, plaintiff would not have been entitled to benefits under it because he had remained on Baxter's United States payroll and because plaintiff was not terminated from his position in Belgium--he was terminated after returning to a position in the United States.

Baxter submits the affidavit of Vinciane Verbiest, Baxter's Vice-President of Human Resources in Europe.  Ms. Verbiest states that "Baxter does not maintain and never has established a European severance plan for its European employees.  Mr. Allen has never participated in a Baxter European severance plan." (Defendants' Rule 56.1 Statement, Ex. B.)

Plaintiff argues that there is a genuine issue of material fact regarding whether Baxter has a European Severance Plan. Plaintiff submits a single item as evidence of the existence of a plan: an e-mail he received from Ms. Verbiest in reply to an

inquiry about European severance benefits.  Attached to plaintiff's Rule 56.1 Statement is an e-mail he sent to Ms. Verbiest on February 10, 2003, which stated: "I need a copy of the Belgium Severance Plan as soon as possible . . . please send me a copy and let me know when I can expect to receive it."  On February 11, Ms. Verbiest replied: "Please find attached the Claeys formula we are using for all managers.  If you have problems to calculate, I can do it.  You should provide me following info your annual salary, [Management Incentive Compensation Plan] of 2002 (or 2003 if already received), car, pension paid by Baxter and any other monthly allowance."  (Plaintiff's Rule 56.1 Statement, Ex. B.) Plaintiff contends that this e-mail "directly contradict[s]" Ms. Verbiest's affidavit and is "evidence of the existence of a European or Belgian Severance Plan."  (Plaintiff's Memorandum at 5.)

We disagree.  Ms. Verbiest's e-mail refers to a "formula" that, vaguely, is being "us[ed] for all managers."  That a formula is or was used to calculate severance benefits for managers in Europe is not evidence that a "plan" exists within the meaning of ERISA.  Although a plan need not be in writing to be covered by ERISA, the plan must be a reality, meaning "something more than a mere decision to extend benefits."  Diak v. Dwyer, Costello & Knox, P.C., 33 F.3d 809, 811 (7th Cir. 1994).  Its essential terms must be ascertainable.  See Brines v. XTRA Corp., 304 F.3d 699, 701 (7th

Cir. 2002). "In determining whether a plan . . . is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Diak, 33 F.3d at 812 (citing Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)).

The Claeys formula may be evidence of the intended benefits; however, plaintiff fails to provide any evidence whatsoever regarding the other three essential aspects of an ERISA plan--the intended beneficiaries, source of financing, or procedures for receiving benefits under the purported "European Severance Plan." Moreover, contrary to plaintiff's contention, the fact that correspondence from the U.S. Severance Plan administrator briefly mentioned plaintiff's "request for a copy of the Belgium severance plan" without comment (when referring plaintiff to human resources in Europe) is not evidence that an ERISA "plan" existed.[3]

Because plaintiff has failed to demonstrate a genuine issue of material fact regarding whether Baxter had a "European Severance Pay Plan" within the meaning of ERISA (let alone whether plaintiff would be entitled to benefits under such a plan), defendants' motion for summary judgment will be granted as to Counts I and II.

**2.   Count III**

---

[3]/   We note that plaintiff does not complain that defendants' discovery responses were inadequate or that he needs additional discovery.

In Count III, plaintiff alternatively claims benefits under what plaintiff labels the "U.S. Severance Plan." Because plaintiff has failed to demonstrate a genuine issue regarding the existence of any other Baxter severance plan, we will simply refer to it as the "Severance Plan" without any geographical designation.

First we must address defendants' argument that with regard to Count III, plaintiff "did not sue the correct party" because ERISA permits suits to recover benefits only against the plan as an entity. That is the general rule, but the Seventh Circuit has allowed ERISA cases to proceed against a company as the named defendant where the plan and the company are closely intertwined. See Mein v. Carus Corp., 241 F.3d 581, 585 (7th Cir. 2001); Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (7th Cir. 1997).

Here, plaintiff has sued Baxter International Inc., the company, and the Baxter International Inc. Administrative Committee, the plan administrator. There is no authority indicating that the latter is a proper defendant as to Count III; thus, summary judgment in favor of the Baxter International Inc. Administrative Committee will be entered as to Count III. As for the company, we will allow plaintiff to proceed against it as the named defendant instead of the plan itself because, as in Mein and

<u>Riordan</u>, there are indicia that the plan and the company are closely intertwined.[4]

The Severance Plan provides: "The Plan Administrator has the sole and absolute power and authority to interpret and apply the provisions of [the] Plan to a particular circumstance, make all factual and legal determinations, construe uncertain or disputed terms and make eligibility and benefit determinations (including, without limitation, determining whether a Termination under the Plan has occurred) in such manner and to such extent as the Plan Administrator in his or her sole discretion may determine." (R. 52.) Plaintiff concedes that, therefore, this court's review is limited to deciding whether the plan administrator's denial of severance pay was "arbitrary and capricious." See <u>Herzberger v. Standard Ins. Co.</u>, 205 F.3d 327, 331 (7th Cir. 2000).

"Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the

_____

[4] We consider the same kinds of factors that the Seventh Circuit considered in <u>Mein</u> and <u>Riordan</u>. Here, the Severance Plan lists the company as an alternative plan administrator to the Administrative Committee; the company funds the plan; and the company's general counsel is the plan's agent for service of process. (Affidavit of Ann Donohue, Exs. 12, 13.) Although we do not agree with plaintiff that the company and the plan are "effectively the same entity," they are closely intertwined enough to permit the company to remain the defendant.

relevant factors that encompass the important aspects of the problem." <u>Hess v. Hartford Life & Accident Ins. Co.</u>, 274 F.3d 456, 461 (7th Cir. 2001) (internal quotation marks omitted). Although the arbitrary and capricious standard grants significant deference to the plan's determination of eligibility, our review is not simply a "rubber stamp": "[I]f fiduciaries or administrators of an ERISA plan controvert the plain meaning of a plan, their actions are arbitrary and capricious." <u>Swaback v. American Info. Techs. Corp.</u>, 103 F.3d 535, 540 (7th Cir. 1996). The arbitrary and capricious standard, though deferential, nonetheless requires "a rational connection between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." <u>Exbom v. Central States, S.E. & S.W. Areas Health & Welfare Fund</u>, 900 F.2d 1138, 1143 (7th Cir. 1990) (internal quotation marks omitted).

As set forth in the letters from Baxter's plan administrator, plaintiff was denied severance pay because he was not "terminated" within the meaning of the Severance Plan. In support of its argument that the plan administrator's decision was not arbitrary or capricious, Baxter relies on the language of the Severance Plan. The relevant portions of the Severance Plan provide as follows:

- <u>Qualification for Severance Pay.</u>  An Eligible Employee for whom a Termination occurs shall qualify for Severance Pay . . . .

- "Eligible Employee" shall mean any individual employed in a domestic facility who is . . . a regular full-time employee . . . .

- "Termination" for purposes of this Plan shall mean the dismissal of an Eligible Employee from active employment by [Baxter] following [December 1, 2002] by reason of:

    (1) a decision by [Baxter] to eliminate such Eligible Employee's employment position; or

    (2) a decision by [Baxter] to reduce the size of [Baxter's] work force.

    Termination, for purposes of this Plan, shall not mean termination of employment with [Baxter] for any reason other than as set forth in (1) and (2) above, including, but not limited to:

        (i) the Eligible Employee's voluntary termination of employment with [Baxter], including termination due to retirement; . . .
        (vii) a decision by [Baxter] that an Eligible Employee does not meet the performance requirements of his or her job assignment.

(Severance Pay Plan, R. 49, 46, 48-49.) Baxter contends that the dispute over whether plaintiff resigned or was fired is immaterial because under the plain language of the Severance Plan, he would not be eligible for severance pay in either case. Baxter further argues that there is no evidence that plaintiff's employment ended due to a reduction in work force or because Baxter decided to eliminate the position.

Plaintiff presents four main arguments in response. The first goes to our standard of review. In plaintiff's view, our inquiry of the plan administrator's decision should be "more searching"

because "the record here demonstrates bias and conflict of interest on the part of Defendants." (Plaintiff's Response at 10.) Plaintiff argues that the plan administrator "ignored [plaintiff's] years of [positive] performance reviews" and that the failure to consider these reviews is evidence of bias. We are unpersuaded. We presume that a fiduciary is acting neutrally unless a claimant shows "by providing <u>specific evidence of actual bias</u> that there is a significant conflict." <u>Kobs v. United Wis. Ins. Co.</u>, 400 F.3d 1036, 1039 (7th Cir. 2005) (emphasis added). Plaintiff has not provided any specific evidence of actual bias; instead, he offers a non sequitur.

Plaintiff's second argument makes much of the "resignation versus firing" issue. Plaintiff asserts that the plan administrator "ignored uncontested evidence in the record that Plaintiff did not resign." (Plaintiff's Response at 10.) This is incorrect. The record shows that the plan administrator considered both plaintiff's and Greisch's characterizations of the termination. Plaintiff does not dispute that he refused to comply with the performance improvement plan when Greisch presented it to him. Because the performance improvement plan was not a choice that plaintiff was free to reject, Baxter treated plaintiff's refusal to comply with it as plaintiff's decision to voluntarily terminate his employment. The plan administrator's determination that plaintiff's rejection of the performance improvement plan

therefore constituted a "voluntary termination of employment" was reasonable.

But in any event, there is no point in belaboring the issue of whether plaintiff resigned, or was fired for performance reasons, or even whether he was fired because of a personality conflict. Our inquiry is strictly whether the plan administrator's decision that plaintiff's termination did not constitute "termination" under the Severance Plan was arbitrary and capricious. It does little good to consider whether plaintiff's termination can be classified as one of the non-exclusive non-qualifying termination events under the plan. The fundamental question, rather, is whether there was a <u>qualifying</u> termination event: was plaintiff dismissed from employment at Baxter "by reason of" Baxter's decision to eliminate his position or by Baxter's decision to reduce the size of its work force? There is simply no evidence of either. Plaintiff's theory—that the performance issues raised by his supervisors in both Europe and the United States and his transfer back to the United States were part of an elaborate attempt to eliminate his position but avoid paying him severance benefits—is sheer speculation. Plaintiff has submitted no evidence to support this conspiratorial theory. Plaintiff's third argument is that his position ultimately was never filled. That is not evidence, however, that the reason for his termination was a decision to eliminate the position.

Plaintiff's fourth contention is that the plan administrator's denial was arbitrary because the letters setting forth its reasons were "inconsistent." Plaintiff claims that the administrator "changed its tune" by initially stating that plaintiff voluntarily resigned and then by stating that regardless of whether he resigned or was fired, he was not entitled to benefits. These positions are not inconsistent; in the second letter, the administrator was merely responding to plaintiff's appeal. More importantly, the letters were consistent in that both stated the ultimate reason for the denial: the administrator determined that the dismissal of plaintiff was not due to a decision to eliminate his position or reduce the work force.

Plaintiff has failed to establish a genuine issue of material fact in support of his argument that the plan administrator's decision to deny him severance pay was arbitrary and capricious. On the record that was before the plan administrator, the evidence does not support a conclusion that the denial was arbitrary and capricious. Therefore, summary judgment in favor of Baxter International Inc. will be entered as to Count III.

**B. <u>Breach of Contract Claim (Count IV)</u>**

During plaintiff's employment with Baxter, Baxter had a pension plan in place. In 1998, plaintiff was asked to transfer to a division of the company that was a "non-participating unit" in the pension plan. To offset the fact that plaintiff's earnings

would not be included in his pension benefit calculation while he was employed in the non-participating unit, Baxter agreed to pay plaintiff a "Retirement Transfer Allowance." The agreement, which was contained in a memorandum to plaintiff from Bert Henderson (whose title is not provided), states in pertinent part:

> This is a confirmation that you will be paid a "Retirement Transfer Allowance" to offset your transfer to a Baxter "non-participating" unit as it relates to the Baxter Retirement Pension and Retirement Medical Plan.
>
> To be eligible for the Retirement Transfer Allowance, you must be an active employee through 12-31. The allowance will be 15% of your year end 12-31 base salary, paid on a pro-rata basis if your transfer date is after January 1 (each month with 1 day or more of service will be a full month pro-rata credit). The actual payment will be paid to you in the 1st quarter after year end. This is a new program which has recently been approved by Deerfield that is effective beginning in 1998 and it is not retroactive.
>
> If you ever transfer back to a Baxter "participating unit," the Retirement Transfer Allowance would be discontinued, but paid pro-rata (as described above) for any portion of the year at year end, if you are an active employee at 12-31 that year.

(Complaint, Ex. E.)

Pursuant to the agreement, plaintiff was paid the Retirement Transfer Allowance for the years 1998, 1999, and 2000, while he was employed in the non-participating unit. Some time in early 2001 (neither party has presented evidence regarding the date), plaintiff rejoined a participating unit. He alleges in the complaint that his earnings in 2001, however, were not included in his pension benefit calculation, nor was he paid a Retirement

Transfer Allowance for 2001. In Count IV, plaintiff claims that Baxter breached the agreement by failing to pay him a Retirement Transfer Allowance for the year 2001.

Baxter presents evidence that days before the complaint in this action was filed, it corrected a "discrepancy" in its data to include plaintiff's 2001 earnings in the pension benefit calculation. On December 3, 2004 (five days before the complaint was filed), Baxter sent plaintiff a revised calculation of the benefits that included his 2001 earnings.

Plaintiff concedes that Baxter did credit him for his 2001 earnings under the pension plan. He maintains, though, without explanation, that he is still entitled to a fifteen percent retirement transfer allowance. A plain reading of the agreement demonstrates that this is incorrect. It is an either/or proposition. Under the agreement, plaintiff could not simultaneously receive pension benefit credit and the retirement transfer allowance. He was entitled to one or the other, depending upon whether he was employed in a participating unit.

In early 2001, plaintiff was transferred back into a participating unit. The agreement explicitly states: "If you ever transfer back to a Baxter 'participating unit,' the Retirement Transfer Allowance would be discontinued, but paid pro-rata (as described above) for any portion of the year at year end, if you are an active employee at 12-31 that year." Therefore, the

retirement transfer allowance should have been paid for the portion of 2001 when plaintiff was employed in a non-participating unit, and plaintiff should have received pension benefit credit for the portion of 2001 when he was employed in a participating unit.

Although Baxter has submitted evidence that it gave plaintiff pension benefit credit for 2001, it appears that Baxter may have over-credited plaintiff by doing so for the entire 2001 year instead of for the portion of 2001 when plaintiff was employed in a participating unit. Baxter has not submitted any evidence that it paid plaintiff a pro rata Retirement Transfer Allowance for the portion of 2001 when plaintiff was employed by a non-participating unit.[5] There is also no evidence of the exact date of plaintiff's transfer between units. Accordingly, defendants' motion for summary judgment will be denied as to Count IV. In the court's opinion, the parties should be able to settle Count IV expeditiously.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. The motion is granted as to Counts I, II, and III of the complaint. It is denied as to Count IV.

---

[5] For example, under the agreement, it appears that even if plaintiff was employed by a non-participating unit for one day in January 2001, and then transferred to a participating unit the next day, plaintiff would be entitled to a pro rata Retirement Transfer Allowance for the month of January, but not for the remainder of the year. Plaintiff's earnings for February through December 2001 would then be included in the pension benefit calculation.

Defendants' motion to strike portions of plaintiff's statement of additional material facts is denied.

A status hearing is set for April 5, 2006, at 10:30 a.m.


DATE:      March 2, 2006


ENTER:     _____
           John F. Grady, United States District Judge